417 So.2d 1338 (1982)
Larry FONTENOT, Plaintiff-2nd Appellant,
v.
CAGLE CHEVROLET, INC., and Great American Insurance Companies, Defendants-3rd & 1st Appellants.
No. 82-109.
Court of Appeal of Louisiana, Third Circuit.
July 2, 1982.
Rehearing Denied August 30, 1982.
*1340 Camp, Carmouche, Palmer, Barish & Hunter, David R. Frohn and Randy J. Fuerst, Lake Charles, for defendant-appellant-appellee.
Caskey & Pizzolatto, Nick Pizzolatto, Jr., Lake Charles, for plaintiff-appellee-appellant.
Ronald J. Bertrand, Woodley, Barnett, Cox, Williams & Fenet, J. L. Cox, Jr., Lake Charles, for defendant-appellee-appellant.
Before FORET, STOKER and DOUCET, JJ.
FORET, Judge.
Larry Fontenot (claimant) brought this workmen's compensation action to recover disability benefits and medical expenses, together with penalties and attorney's fees. Named defendants are: Cagle Chevrolet, Inc. (Cagle Chevrolet), claimant's alleged employer at the time the work-related accident occurred; and, Great American Insurance Companies (Great American), the workmen's compensation insurer of Cagle Chevrolet at the time of the accident. Cagle Chevrolet brought a third party demand against Great American seeking to recover attorney's fees incurred by it in defending this claim and indemnity for any sums it might be held liable to pay claimant, should he be successful in prosecuting his action.
The trial court, after trial, rendered judgment on the main demand in favor of claimant and against defendants, finding claimant to have been temporarily totally disabled from February 12, 1981, the date of the work-related accident, to November 2, 1981, the date of trial. Claimant was awarded disability benefits of $163.00 per week for this period of time. Claimant was also decreed to be partially disabled for a period not to exceed six (6) months beginning from the date of trial. Claimant was awarded disability benefits in the amount of 66 2/3% of the difference between the wages he was earning at the time of the accident ($250.00 per week) and any lesser wages he might actually earn in any gainful occupation for wages, but limited to a *1341 maximum of $163.00 per week. Claimant was also awarded $4,088 for medical expenses. Finally, claimant was awarded penalties of 12% of all weekly disability benefits found to be delinquent from February 12, 1981, until paid, and attorney's fees of $750.00. This last award was made against Great American, which was found to have been arbitrary, capricious, and without probable cause in failing to pay claimant's disability benefits.
As to the third party demand, the trial court rendered judgment in favor of Cagle Chevrolet (third party plaintiff) and against Great American (third party defendant), ordering third party defendant to indemnify third party plaintiff for all sums it had been ordered to pay claimant on the main demand. In addition, third party defendant was ordered to pay all costs incurred by third party plaintiff in defending against the main demand, that amount having been stipulated to as being $2,410.40.
Both defendants have appealed suspensively from the trial court's judgment and raise the following issues:
Whether the trial court committed manifest error:
(1) in finding that claimant's misrepresentations of his physical condition in obtaining employment with Cagle Chevrolet failed to constitute a bar to his recovery of workmen's compensation benefits;
(2) in failing to find that claimant was an independent contractor for whom no coverage is provided by the Louisiana Workmen's Compensation Act;
(3) in finding that claimant was an employee of defendant, Cagle Chevrolet;
(4) in finding that claimant was performing work which was necessary and substantially related to the regular trade or business operations of defendant, Cagle Chevrolet;
(5) in finding that the workmen's compensation policy issued by Great American to Cagle Chevrolet provided coverage for the injuries suffered by claimant; and,
(6) in finding defendant, Great American, to be arbitrary, capricious, and without probable cause, in failing to pay disability benefits to claimant.
Claimant has appealed devolutively from the trial court's judgment and raises the following issues:
Whether the trial court committed manifest error:
(1) in finding that claimant was only temporarily disabled, rather than permanently disabled;
(2) in finding that claimant would be partially disabled for only six (6) months post-trial and limiting its award of benefits to him for said disability to that time period.
Further:
(3) Whether the trial court abused its discretion in awarding claimant $750.00 in attorney's fees, which is alleged to be grossly inadequate, and
(4) Whether claimant is entitled to an award of additional attorney's fees should he be successful in prosecuting this appeal.

FACTS
Claimant was hired by Joe Cagle, Sr., in November of 1980 as a bulldozer operator. Joe Cagle, Sr. and his brother, Kenneth "Bobby" Cagle, own some seventeen hundred acres of land, located in Calcasieu Parish, some of which needed clearing. Claimant was put to work clearing a certain portion of that tract of land immediately after he was employed. While in the process of performing this task on February 12, 1981, he drove the bulldozer to an area of the tract of land, where he believed that a fellow employee was having trouble containing a fire burning the stumps and trees cleared off the land. Claimant climbed down onto one of the tracks of the bulldozer to talk to this other person. However, while standing on the track, he slipped and fell to the ground, injuring his back.
Claimant duly reported this accident to his employer, who directed him to the emergency room of a nearby hospital. There, he *1342 received treatment from George P. Schneider, M.D., who had been treating him at the time for an earlier back injury that had required surgery to correct. Dr. Schneider is an orthopedic surgeon. He hospitalized claimant from February 12, 1981, to February 20, 1981, for treatment of the injuries he received in his fall off the bulldozer. He has continued to follow up on claimant's condition and had to hospitalize him one more time subsequent to the period following the accident for an acute flare-up of his back injury.
Claimant instituted this action when defendants refused to pay him disability benefits and medical expenses incurred by him for the treatment of his injuries.
Defendant, Cagle Chevrolet, answered claimant's original petition, denying the significant allegations contained therein, except to admit that it had been informed of the accident and had failed to pay any compensation benefits to claimant. Defendant, Great American, also answered claimant's original petition denying the significant allegations contained therein, except to admit that it had been informed of the accident. It further answered, alleging that the policy it had issued to Cagle Chevrolet specifically excluded coverage for anyone employed in farm or agriculture-related work, which it alleged that claimant was performing at the time of the accident.
Cagle Chevrolet then filed a first supplemental and amending answer in which it alleged: that claimant was an independent contractor at the time of the accident; that, in the alternative, if the trial court should find that claimant was not an independent contractor, then his workmen's compensation action is barred by the fact that he misrepresented his physical condition at the time he was employed, in that he would not have been employed had his true condition been known; that, if claimant is found to be disabled, then said disability is a continuation of a previous disability for which he was being treated at the time he was employed, and, accordingly, he is unable to recover workmen's compensation benefits from Cagle Chevrolet; that, at the time of the accident, claimant was collecting workmen's compensation benefits from another source, and, to prevent claimant from obtaining a double recovery, Cagle Chevrolet should be allowed a set-off for prior recoveries being made by claimant during the time period for which this action was filed; and, in the alternative, if the trial court should find that claimant is entitled to recover workmen's compensation benefits for the claim on which this action is based, then claimant's continued disability is a result of an intervening accident which occurred on August 1, 1981, when claimant allegedly injured his back lifting a heavy ice chest, and his benefits should be terminated as of that date.
Cagle Chevrolet also filed a third party demand against Great American in which it alleged: that it had purchased a policy of workmen's compensation insurance from Great American, which was in force at the time claimant's accident occurred; that Great American had been duly notified of claimant's accident, and the demand being made upon Cagle Chevrolet as a result of said accident; that Great American denied coverage for the accident and refused to provide Cagle Chevrolet with a defense to claimant's action; that Cagle Chevrolet was entitled to recover from Great American a sum equal to the amount of attorney's fees actually incurred by it in defending against claimant's action, and, in the alternative, should claimant be successful in prosecuting his action, then Cagle Chevrolet was entitled to judgment against Great American indemnifying it for any sums which it might be ordered to pay claimant.
Great American answered Cagle Chevrolet's third party demand denying that its policy provided coverage for the accident in which claimant was injured because claimant was engaged in "... farm or agricultural employment ..." at the time of the accident for which there was a specific exclusion in the policy issued by it. After trial, defendants stipulated as to the amount of attorney's fees owed to Cagle Chevrolet by Great American.

*1343 CLAIMANT'S ALLEGED MISREPRESENTATION OF HIS PHYSICAL CONDITION
The trial court found that claimant had misrepresented his physical condition to his employer, but went on to further find that there was no causal connection between the misrepresentation of his pre-existing condition and his injury. Thus, the trial court held that claimant's misrepresentation was no bar to his recovery in this action.
Defendants contend that the trial court committed manifest error in finding that claimant's misrepresentation of his physical condition failed to operate as a bar to his recovery of workmen's compensation benefits. We disagree.
Johnson v. Calcasieu Paper Company, 95 So.2d 659 (La.App. 1 Cir. 1957), writ denied (La.1957), found, on page 665, that:
"As to defendant's fourth defense he is frank to admit that he knows of no case sustaining the defense of estoppel. The estoppel which defendant relies on herein, of course, is that Mr. Johnson is taking advantage of his own refusal to disclose the true facts first during his pre-employment physical and second to the physicians who testified in his behalf. Although the case of Peavy v. Calcasieu Paper Company, Inc. [La.App.], 70 So.2d 755 is one where plaintiff withheld information during his pre-employment physical and yet recovered, the instant case involves more fraud on the part of the claimant. At the same time considering the universally accepted mandate that the Courts are to liberally construe the workmen's compensation act in favor of the employee, this Court cannot recognize the doctrine of estoppel to be used against an employee in the manner suggested by the defendant. Defendant has the opportunity of protecting itself from employees such as the plaintiff by conducting a thorough pre-employment physical and further, by conducting an investigation of its applicants for jobs." (emphasis ours.)
The test for recovery in a workmen's compensation action is not the veracity of the claimant, but whether he has been disabled. Johnson v. Calcasieu Paper Company, supra; Mitchell v. Travelers Insurance Company, 136 So.2d 143 (La.App. 3 Cir. 1961), writ denied (La.1962); Richard v. Barber Brothers Company, 112 So.2d 168 (La.App. 1 Cir. 1959).
13 La. Civil Law Treatise: Workers' Compensation, § 53 provides, in pertinent part, that:
"If the matter that the employee misrepresented was not a factor in bringing about the accident, it is clear that he should not be deprived of his right to compensation; 21 and even where, as in the Plick [Plick v. Toye Brothers Auto & Taxicab Co., 13 La.App. 525, 127 So. 59 (Orl. Cir. 1930)] case, the misrepresentation directly affected the conditions of safety, the same result should follow; for the employer's liability to pay compensation is not limited to responsibility merely for the risks he could have avoided. If the employer were permitted to litigate the intricacies of the bargaining that led to the employment, a new uncertainty would be introduced and the now discredited notion that the employee must be free from fault would, to that extent, be resurrected."
LSA-R.S. 23:1081 provides:
"§ 1081. Deliberate or wilful injuries, etc.; defenses; burden of proof
No compensation shall be allowed for an injury caused (1) by the injured employee's wilful intention to injure himself or to injure another, or (2) by the injured employee's intoxication at the time of the injury, or (3) by the injured employee's deliberate failure to use an adequate guard or protection against accident provided for him or (4) by the employee's deliberate breach of statutory regulations affecting safety of life or limb.
In determining whether or not an employer shall be exempt from and relieved of paying compensation because of injury sustained by an employee for the causes and reasons set forth in this Section, the burden of proof shall be upon the employer."
*1344 Cagle Chevrolet could have protected itself by requiring claimant to undergo a pre-employment physical, especially in view of the fact that Joe Cagle, Sr. was aware of the fact that claimant had been previously injured. Joe Cagle, Jr., a part owner of Cagle Chevrolet, testified that he was also aware of the fact that claimant had been previously injured at the time he was hired. Further, as the trial court correctly found, claimant's misrepresentation was not a factor in bringing about the accident that occurred. Finally, LSA-R.S. 23:1081 does not list wilful misrepresentation by a prospective employee of his physical condition as a defense to a claimant's workmen's compensation action.
The trial court correctly found that claimant's misrepresentation as to his physical condition was no bar to his recovery in this action.

CLAIMANT'S ALLEGED INDEPENDENT CONTRACTOR STATUS
LSA-R.S. 23:1021 defines an independent contractor as follows:
"(5) "Independent contractor" means any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or as a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished, and are expressly excluded from the provisions of this Chapter unless a substantial part of the work time of an independent contractor is spent in manual labor by him in carrying out the terms of the contract, in which case the independent contractor is expressly covered by the provisions of this Chapter."
The evidence shows that no contract existed between claimant and Cagle Chevrolet specifically for the clearing of the tract of land, providing that a certain area of the tract of land would be cleared for a certain price. Instead, claimant was paid by Cagle Chevrolet at the rate of $50.00 per day, or $6.00 per hour if he did not work a full day. Joe Cagle, Sr., in his testimony, specifically stated that claimant was an employee of Cagle Chevrolet. The bulldozer being operated by claimant belonged to Cagle Chevrolet. Both Joe Cagle, Sr. and Kenneth Cagle testified that they instructed claimant on an almost daily basis as to the clearing they wanted done, and that sometimes plans were changed so that different areas of the tract of land would be cleared.
We find no merit to the argument that claimant was an independent contractor.

WHO WAS CLAIMANT'S EMPLOYER?
Defendants contend that the trial court committed manifest error in finding that claimant was an employee of Cagle Chevrolet. Instead, they argue that he was employed by Joe Cagle, Sr. and Kenneth Cagle. We find no merit to this argument.
As noted above, Joe Cagle, Sr. specifically testified that claimant was an employee of Cagle Chevrolet. He also testified that the original purpose for hiring claimant was to clear some land, where Cagle Chevrolet planned to build new dealership facilities. However, re-zoning problems postponed those plans for a while and, during this period of time, claimant was put to work clearing the tract of land where the accident occurred. Joe Cagle, Sr. stated that if claimant had continued to work, he would have been used to clear land for the new dealership as soon as that became possible. Claimant was paid by checks drawn on the account of Cagle Chevrolet as shown by the evidence.
Defendants strenuously argue that claimant was employed by a joint venture existing between Joe Cagle, Sr. and Kenneth Cagle. They further argue that Kenneth Cagle had control and supervision over claimant, rather than Cagle Chevrolet, and that this factor proves that no employee-employer relationship existed between Cagle Chevrolet and claimant. However, defendants overlooked the fact that Kenneth Cagle was the secretary/treasurer for Cagle Chevrolet. Further, Joe Cagle, Jr. testified that he owned 25% of Cagle Chevrolet, and *1345 that claimant was paid by that entity. It is clear that claimant was under the control and supervision of the top management of Cagle Chevrolet, and was considered by them to be an employee of Cagle Chevrolet, which we find that he was.
Defendants argue that, if this Court should find that claimant was an employee of Cagle Chevrolet, then his injury was still not compensable under the workmen's compensation laws because his employment was not necessary to and substantially related to the regular trade, business, or operation of Cagle Chevrolet.
LSA-R.S. 23:1031 provides that compensation shall be allowed for accidental injury "arising out of and in the course of" the claimant's employment. Under the jurisprudence interpreting this statute, it has been held that the terms "arising out of" and "in the course of" are not synonymous but, nevertheless, must be considered together. To "arise out of" the employment, the accident must be the result of some risk to which the employee is subjected in the course of his employment and to which he would not have been subjected had he not been so employed. Time, place and circumstance must determine this. An accident occurs during the course of the employment when it occurs during the time of the employment and at a place contemplated by it. See Laughlin v. City of Crowley, 411 So.2d 708 (La.App. 3 Cir. 1982), and authorities cited therein.
We find that claimant's accident was the result of some risk to which claimant was subjected in the course of his employment by Cagle Chevrolet. The accident occurred during the time of claimant's employment and at a place contemplated by it. We find that the cases cited by defendants in support of their argument are inapposite to the case sub judice, in that they either deal with situations involving independent contractors, or involved decisions based on certain provisions of the Louisiana Workmen's Compensation Act (LSA-R.S. 23:1035) that are no longer applicable to situations such as this.

ALLEGED EXCLUSION OF CLAIMANT FROM COVERAGE BY PROVISION OF POLICY
Great American argues that claimant is excluded from coverage by certain provisions of the policy of workmen's compensation insurance issued by it to Cagle Chevrolet. The policy excludes coverage of employees engaged in domestic employment or farm or agricultural employment. Great American argues that claimant was engaged in farm or agricultural employment at the time of the accident.
The evidence clearly shows that Cagle Chevrolet was not engaged in the business of farming at the time of the accident. It is true that the land being cleared by claimant was to have been eventually used as pasture land on which Joe Cagle, Sr. and Kenneth Cagle were going to attempt to establish a small registered herd of Santa Gertruda and Brahman cattle. However, they were still in the process of acquiring cattle and raising them. They had sold none and had made no income off of such activity. In fact, Joe Cagle, Sr. indicated that the raising of these animals would be more of a hobby for him than anything else. We agree with the trial court's finding that claimant, himself, was not engaged in farm or agricultural employment at the time of the accident and that the policy exclusion is inapplicable.
Great American also argues that the "alter ego" doctrine relating to corporations is applicable here and that Joe Cagle, Sr. in his "alter ego" as an individual had employed claimant. This issue was not raised in the pleadings, nor was it submitted to the trial court. Thus, we will dismiss this argument with no discussion.

PENALTIES AND ATTORNEY'S FEES
Great American contends that the trial court committed manifest error in finding that it was arbitrary, capricious, and acting without probable cause, in failing to pay disability benefits to claimant. It argues that there were close legal questions involved as to whether its policy provided *1346 coverage for the accident in which claimant was injured. The only defense plead in Great American's answer for its failure to pay claimant disability benefits was that its policy excluded coverage to anyone employed on the "Cagle Farm". The evidence shows that the real dispute over who should pay disability benefits to claimant existed between defendants, themselves, rather than between either of the defendants and claimant.
Our review of the record establishes that the trial court's finding that Great American acted arbitrarily, capriciously, and without probable cause, in failing to pay disability benefits to claimant is not clearly wrong. However, we find that the trial court erred in awarding claimant only $750.00 in attorney's fees. We find this amount to be grossly inadequate. We will increase claimant's award of attorney's fees to $4,000.00 for said professional services rendered both in his appeal to this Court and the representation of him in the trial court.

DURATION OF CLAIMANT'S DISABILITY
Claimant contends that the trial court committed manifest error in finding that he would be partially disabled for a period "not exceeding six months from November 2, 1981". As noted above, George Schneider, M.D., an orthopedic surgeon, who was accepted by the court as an expert in that medical specialty, provided the only testimony regarding the duration of claimant's disability. He was of the definite opinion that claimant would recover from the injuries suffered in the accident within a period of six months post-trial. The trial court obviously accepted Dr. Schneider's professional judgment.
Our review of the record establishes that the trial court's finding regarding the duration of claimant's disability is not clearly wrong. Once the trial court has made factual findings as to disability and the length thereof, these determinations are entitled to great weight and are not to be disturbed except upon a showing of manifest error. Hoofkin v. Schwegmann Brothers Giant Super Markets, Inc., 398 So.2d 1218 (La.App. 4 Cir. 1981); Newell v. United States Fidelity & Guaranty Company, 368 So.2d 1158 (La.App. 3 Cir. 1979); Stokes v. Continental Insurance Company, 345 So.2d 1200 (La.App. 1 Cir. 1977).
In addition, LSA-R.S. 23:1222 provides:
"§ 1222. Probable duration of disability as basis for compensation
For injury producing temporary total or temporary partial disability the court may, in its discretion, award compensation for a fixed number of weeks to be based upon the probable duration of such disability."
For the above and foregoing reasons, the trial court's judgment is amended to award claimant $4,000.00 as attorney's fees for both his appeal to this Court and for the prosecution of his claim in the trial court, and is affirmed as amended.
All costs of this appeal are assessed against defendant-appellant, Great American.
AFFIRMED AS AMENDED.